NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

19-P-63                                           Appeals Court

COMMONWEALTH  vs.  JAMIE T. HEMPEL.

No. 19-P-63.

Barnstable.     November 5, 2025. - August 12, 2026.

Present:  Rubin, Brennan, & Wood, JJ.


Constitutional Law, Assistance of counsel, Waiver of
     constitutional rights.  Practice, Criminal, Assistance of
     counsel, Self-representation, Waiver, New trial.  Waiver.



     Indictments found and returned in the Superior Court
Department on May 15, 2015.

     The cases were tried before Gary A. Nickerson, J., and a
motion for a new trial, filed on February 1, 2023, was heard by
Michael K. Callan, J.


     Dana Goldblatt for the defendant.
     Elizabeth A. Sweeney, Assistant District Attorney, for the
Commonwealth.


     RUBIN, J.  After a jury trial in the Superior Court, the

defendant was convicted of home invasion, G. L. c. 265, § 18C;

assault with the intent to murder, G. L. c. 265, § 15; assault

and battery by means of a dangerous weapon (an axe), G. L.

c. 265, § 15A (b); and assault by means of a dangerous weapon, G. L. c. 265, § 15B (b). He timely filed a notice of appeal. We stayed the appeal and ultimately dismissed it without prejudice pending the adjudication of postconviction motions. The defendant filed a motion for a new trial, which, because the trial judge had retired, was heard by a different judge and denied without an evidentiary hearing. The defendant timely appealed from the denial of the motion, and we reinstated his direct appeal and consolidated them. The consolidated appeals are now before us.

On appeal, the defendant primarily argues that he was allowed to represent himself for a portion of the trial, relegating his attorney (trial counsel) to the role of standby counsel, but that the trial judge failed to provide the warnings and make the inquiry required under art. 12 of the Massachusetts Declaration of Rights before a waiver of the right to counsel can be found knowing and intelligent. We agree. The defendant's convictions therefore must be vacated and the case remanded for a new trial should the Commonwealth decide to proceed with one.

1. Background. a. The crimes. We recite the facts that the jury could have found. On March 23, 2015, the defendant kicked open the locked front door of Susan Finn's apartment, without permission. Finn was in the apartment with her

boyfriend, Kevin Eldridge, her friend Karen Doyle (then Karen Kane), whom she knew through Eldridge, and Karen's[1] husband of twenty-eight years, Matthew Kane.  The defendant was holding an axe with both hands.  He came in and swung the axe at Finn's head, just missing her.  He continued to come after Finn with the axe; Finn was subsequently taken by ambulance to the hospital where she received stitches on her shoulder; in addition, her pants had a cut down the back.  Eldridge and Matthew struggled with the defendant, and Matthew was hit twice by the defendant with a blunt part of the axe causing bruising.

b.  Appointment of counsel.  After the defendant was indicted, he was assigned three different court-appointed lawyers before his trial counsel was appointed.[2]

On May 11, 2016, two months before the trial date, the defendant filed a motion for appointment of new counsel.  At the motion hearing, trial counsel reported that "there is a strong disagreement between what I think the correct trial posture is and what Mr. Hempel says."  The judge inquired about the defendant's experience with the court system, focusing on the

---

[1] Because some witnesses shared a surname at the time of the crimes, we use first names in this section to avoid confusion.

[2] The first lawyer withdrew because of a conflict.  The motions of the second and third lawyers to withdraw were allowed, but the record before us does not reveal the basis for their withdrawals.

number of court appearances the defendant had made in order to assess his "familiarity with the court process." The judge noted that there were at least seventeen restraining order appearances, which are in civil cases, and at least two criminal cases in Florida "a while back." (The then-forty-four year old defendant said these cases were from twenty-five years previously when he had been nineteen.) The judge ultimately concluded that the issue was not the lawyer, but the defendant. He denied the motion, saying, "I'm not granting your motion. You have an absolute right to represent yourself, and you may do so. [Trial counsel] will remain as your trial counsel. If you wish to exercise your right to represent yourself, you certainly may do that as well, sir; in which case, [trial counsel] would be your standby counsel."

Before the next pretrial conference, held on June 16, 2016, the defendant filed a motion to dismiss his attorney. At the hearing, the judge excused the prosecutor and closed the court room. The defendant then aired a laundry list of complaints about his attorney, after which trial counsel stated that the defendant "wants to call some witnesses that I cannot call" because "I think I would have an ethical issue." The judge said, "I assume rightly or wrongly, the concern is whether there's a question of perjury or subornation of perjury," to which trial counsel responded, "Yes." The judge said, "[T]here

is a standard procedure for that." He said without elaboration that "basically it involves you stepping aside for that purpose, for that limited purpose," suggesting he was talking about the procedure approved in Commonwealth v. Mitchell, 438 Mass. 535, 552, cert. denied, 539 U.S. 907 (2003), under which a defendant may exercise the right to testify in the defendant's own defense, despite trial counsel's knowledge that the defendant will testify falsely, by delivering narrative testimony without the lawyer's participation. See Mass. R. Prof. C. 3.3 (a) (3), as appearing in 471 Mass. 1416 (2015) ("lawyer shall not knowingly . . . offer evidence that the lawyer knows to be false"). See also Mass. R. Prof. C. 3.3 (e) comment 11B (attorney "knows" that defendant client intends to "testify falsely" if attorney has "a firm basis in objective fact" for his "good faith" determination defendant will do so). The judge then said, with the prosecutor still excused from the hearing, "Everybody should [b]one up on that and be ready for that." The judge denied the defendant's motion to dismiss his attorney.

c. The trial. On the day the trial began, the judge asked the defendant, "Are you going to be representing yourself? Is [trial counsel] going to be then relegated to the role of standby counsel? Are you going to use [trial counsel] as your counsel?" The defendant replied, "[Y]ou said that he would be a standby. So, I was kind of going by that assumption." The

judge said they would proceed however the defendant and counsel decided. The judge then asked "[w]hether it would be appropriate for [trial counsel] to represent you in all matters but the calling of [the witness trial counsel could not ethically call, Karen Doyle]." Trial counsel confirmed that there was an ethical issue, and that under Mitchell, he could not call one particular witness the defendant wanted him to call. See Mass. R. Prof. C. 3.3 (a) (3); Mitchell, 438 Mass. at 547. Trial counsel then said, "I don't think any other attorney could represent Mr. Hempel because it's going to be the same issue."

The next morning, prior to the beginning of jury selection, the judge announced, "I am going to conduct a hearing or a colloquy with Defense counsel and Mr. Hempel and the Court. The courtroom will be closed." The defendant reported that he and trial counsel had discussed "me questioning the witness that [trial counsel] didn't want to question . . . . And then to have [trial counsel] do the things that I feel are . . . in my best interest for him to do . . . so that I don't hurt myself." The defendant was concerned that he would not be able to act in his own best interests because "I only have a [general educational development certificate (GED)]." The judge responded, "[Y]ou and I have had a fair amount of dealings . . . . [Y]ou are always articulate. You always have something

pertinent to say. You always have something right on point to tell me. . . . [Y]ou have no trouble making your thoughts and concerns known to me. You are very articulate."

The judge then explained to the defendant that, although Mitchell was "different than our situation where we're dealing with a witness," Mitchell was still the only Massachusetts case that gave him guidance, even though it involved a defendant who was going to testify falsely as opposed to potential witness perjury. He also said, "[W]hether that would be an appropriate way to handle a witness, I don't have any guidance from the Supreme Court of our state on that subject. But it would seem to me that's one model, one way to do it."

The judge explained to the defendant trial counsel's ethical concern in calling Doyle to ensure that the defendant had "a very clear understanding" of the issue. This is required under Mitchell when a defendant insists on testifying despite trial counsel being ethically bound not to call that defendant. See Mitchell, 438 Mass. at 552 (defendant must "clearly understand the situation he has created"). The judge also warned the defendant that he risked further legal consequences, including further prosecution, if he were to suborn perjury by calling Doyle himself.

The defendant continuously expressed concerns about his ability to represent himself. He said, "[Trial counsel] should

talk because he has a law background -- it's probably the best way to proceed." Trial counsel worried that if he were to cross-examine the Commonwealth's witnesses but then "sit here with [his] hands underneath [him]" while the defendant presented his own case, that would be a "red flag" to jurors. The judge again brought up Mitchell but was candidly unsure about whether the procedure in that case would be "an appropriate way to handle a witness."

The judge discussed how the Mitchell approach worked in the case of a defendant testifying. The defendant expressed concern about how it would work in his case. The judge then said, "But, you know, Mr. Hempel, you are an intelligent man. . . . I don't care how far you went in school. . . . You know, I have had people that are dropouts that are a hell of a lot brighter than some of the lawyers I see, you know? . . . It's the simple truth." The judge then said, "[I]f I were making a decision about this, I would say, [w]ell, Mitchell is my best guidance. That's my decision. But how to conduct the trial really is between you two. I can't make your tactical decisions."

The judge said he needed to know, "Are we proceeding in a fairly strict sort of Mitchell format? In other words, [trial counsel is] carrying the ball but for that witness? Or are we going to proceed where you are representing -- you know, in the past, you have said, I want to represent myself. You have told

me that any number of times." The judge allowed the defendant and trial counsel to meet privately, and when they returned, trial counsel said, "I will cross-examine the Commonwealth's witnesses, and Mr. Hempel will handle his witness and himself. . . . And then I will do the closing."

Trial counsel delivered an opening statement and cross-examined the Commonwealth's witnesses. During the defense case, trial counsel called and examined one defense witness. The defendant then called and examined Doyle as a witness. Doyle testified that on the day of the attack, she "waved" the defendant into Finn's apartment and then a third party attacked the defendant with an axe. She testified that she ran out the back door as soon as the fight began, and flagged down a passing motorist who took her to the police station. She testified that while there, she was hysterical, terrified, and under the influence of illegal drugs.

On cross-examination, Doyle was confronted with prior verbal, written, and recorded statements that she made to the police that were inconsistent with her trial testimony. This included that Doyle had told multiple police officers and a dispatcher that "Jamie Hempel was armed with an axe and a knife and he was killing everyone at [Finn's address]." She continuously asked whether Finn was okay, implying that she

understood Finn, rather than the defendant, was a victim of the attack.

The prosecutor also presented Doyle's previous statements describing in some detail the defendant's past violent conduct and threats, including evidence that she was afraid of the defendant and had sought a G. L. c. 209A restraining order against him on the very morning of the home invasion. These threats included not only physical violence against Doyle, but a threat to kill her. The prosecutor played a recording of Doyle's police interview to refresh her recollection. Doyle also admitted to abusing substances, often with the defendant, including on the day of the attack. During cross-examination, trial counsel objected to one of the prosecutor's questions.

After a lunch recess, and before conducting redirect examination, the defendant asked to speak to the judge. The judge obliged but recommended that the defendant speak to trial counsel first, to which the defendant replied,

> "No. I know what to say. I don't want to talk to him anymore. The statement that [the prosecutor] just read from the Eastham police, okay, I didn't have any of that before it was read into -- I don't know how that was allowed. And before I called this witness, I didn't know none of this was going to be called [sic] if I called [Doyle] to the stand."

The judge responded, "I don't know what your conversations have and haven't been with [trial counsel]. . . . I don't know what you were and weren't aware of in any of this."

Trial counsel then notified the judge that the defendant intended to handle the cross-examination of any Commonwealth rebuttal witnesses and present his own closing argument. The defendant confirmed that he wanted trial counsel to stay on as standby counsel. The judge responded, "If you're telling me that you're taking over the case, then that means that if there's any case in rebuttal, you would be doing the cross-examination and closing arguments." The defendant responded, "Yeah, that's not a problem." The judge then said, "The Court has had numerous dealings with Mr. Hempel and the Court has no concern that the gentleman suffers from any mental health condition that would preclude him from going forward." At no point did the judge conduct a colloquy, ask any questions, or give any warnings to the defendant to ensure that his decision to represent himself for the remainder of the trial was knowing and intelligent.

The defendant conducted redirect examination of Doyle, and the prosecutor conducted recross-examination. The defendant decided not to testify and rested his case. The prosecutor called two rebuttal witnesses, and the defendant chose not to cross-examine them.

At the charge conference the next day, trial counsel made two brief comments, including agreeing with the prosecutor about which theory of assault was at issue in the case. After

discussion of the charge ended, the judge explained to the defendant what he could argue in closing argument. After the judge said that the defendant could argue the facts and reasonable inferences therefrom, he began to say that the defendant could argue that they were not sufficient to support a finding that all the required elements were proven. The judge stopped, though, and said, "I assume you've had a talk with [trial counsel] about what are the elements of the crimes, as far as what the government has to prove." The defendant said, "Not really." The judge then told the defendant in "rough form" what the elements of each of the seven counts of the indictment were. The defendant then delivered his own closing argument.

2. Discussion. a. Standard of review. "Under the Sixth Amendment to the United States Constitution and art. 12 [of the Massachusetts Declaration of Rights], the defendant has a right to counsel at every 'critical stage' of the criminal process." Commonwealth v. Johnson, 80 Mass. App. Ct. 505, 510 (2011), quoting Commonwealth v. Woods, 427 Mass. 169, 174 (1998). Here, the defendant claims that his waiver of the right to counsel was not knowing and intelligent and therefore violated the Sixth Amendment and art. 12. "[W]e review claims of violations of the right to counsel de novo, making an 'independent determination of the correctness of the judge's application of constitutional principle to the facts found.'" Commonwealth v. Means, 454

Mass. 81, 88 (2009), quoting Commonwealth v. Currie, 388 Mass. 776, 784 (1983).

b. Waiver of the right to counsel. A defendant has the freedom to waive his right to counsel and represent himself. See Commonwealth v. Johnson, 424 Mass. 338, 340 (1997). Indeed, he has a constitutional right to represent himself. See Faretta v. California, 422 U.S. 806, 807 (1975). But when a defendant seeks to represent himself and, therefore, necessarily to waive his right to counsel, a judge "bears a 'serious and weighty responsibility' to ascertain whether the waiver is knowing and intelligent." Commonwealth v. Barros, 494 Mass. 100, 112 (2024), quoting Commonwealth v. Cavanaugh, 371 Mass. 46, 53 (1976).

"Under art. 12 of the Massachusetts Declaration of Rights, a criminal defendant's waiver of the right to counsel must be made knowingly and intelligently, with 'adequate[] aware[ness] of [(1)] the seriousness of the charges, [(2)] the magnitude of [the] undertaking, [(3)] the availability of advisory counsel, and [(4)] the disadvantages of self-representation." Barros, 494 Mass. at 100-101, quoting Commonwealth v. Martin, 425 Mass. 718, 720 (1997).

The judge must conduct a "careful inquiry on the record" to determine whether the waiver is knowing and intelligent. Means, 454 Mass. at 89. "[Article] 12 always requires this inquiry"

(emphasis added).  Barros, 494 Mass. at 106.  The trial judge must ask the defendant "questions designed to establish that the defendant understands the implications of his choice," Commonwealth v. Cote, 74 Mass. App. Ct. 709, 712 (2009), including "the magnitude of [the] undertaking" and "the disadvantages of self-representation," Barros, supra at 101.  To ensure that a defendant's waiver of counsel is knowing and intelligent, the judge must "provi[de] . . . information to the defendant concerning the risks of being unrepresented." Commonwealth v. Clemens, 77 Mass. App. Ct. 232, 240 (2010).  See Iowa v. Tovar, 541 U.S. 77, 88-89 (2004) (pursuant to Sixth Amendment, "before a defendant may be allowed to proceed pro se, he must be warned specifically of the hazards ahead").  The defendant must "be made aware of the dangers and disadvantages of self-representation" (citation omitted).  Barros, 494 Mass. at 105.  The requirement that the judge ensures that the defendant has a subjective understanding of the disadvantages of self-representation "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty." Id. at 104, quoting Johnson v. Zerbst, 304 U.S. 458, 462-463 (1938).  Our courts, though, "have not prescribed the questions that a judge must pose to an accused who desires to represent himself."

Commonwealth v. Barnes, 399 Mass. 385, 390 (1987).

c. Standby counsel. A defendant who has properly waived his right to counsel may be appointed so-called "standby counsel." See, e.g., Commonwealth v. Leonardi, 76 Mass. App. Ct. 271, 275-276 (2010). This is provided for by S.J.C. Rule 3.10, § 4, as appearing in 475 Mass. 1301 (2016), which states, "Notwithstanding a party's waiver of counsel, where the interests of justice so require, the judge may assign standby counsel to assist the party in the course of the proceedings regardless of whether the party is indigent." Standby counsel can be appointed to aid a defendant in any number of ways, so long as standby counsel does not interfere with the self-represented defendant's constitutional right to represent himself, recognized in Faretta, 422 U.S. at 807. See McKaskle v. Wiggins, 465 U.S. 168, 178 (1984). Where a defendant proceeds with standby counsel, the judge must ensure that the defendant's waiver of counsel is knowing and intelligent, just as the judge must do in cases of self-representation in which no standby counsel is appointed. See S.J.C. Rule 3.10, §§ 3, 4; Martin, 425 Mass. at 719-720.

Appointing standby counsel to assist a defendant is a form of "hybrid representation." Commonwealth v. Molino, 411 Mass. 149, 153 n.5 (1991). "In the typical hybrid representation, a trial court acts in its discretion to appoint standby counsel

for a pro se defendant . . . ." Banks v. Horn, 271 F.3d 527, 539 (3d Cir. 2001), rev'd, 536 U.S. 266 (2002). Thirty-five years ago, in dictum in a footnote, the Supreme Judicial Court, however, said,

> "The term 'hybrid representation' encompasses two forms of attorney-client relationships. First, the attorney may act as cocounsel to the defendant: Both the attorney and the defendant may address the court, question witnesses, and join in the conduct of the trial. Second, the attorney acts in a purely advisory capacity, providing the defendant with advice on how to present the case, but not actually participating in the presentation of the case. Standby counsel usually falls in the latter category."

Molino, supra, citing Locks v. Sumner, 703 F.2d 403, 407 (9th Cir.), cert. denied, 464 U.S. 933 (1983).

The appointment of standby counsel is commonplace. We see it routinely, and indeed, before a defendant may knowingly and intelligently waive his right to counsel, he must be adequately aware of "the availability of advisory counsel." Barros, 494 Mass. at 101. By contrast, Molino, 411 Mass. at 153 n.5, is the only reported Massachusetts case in which a relationship between an attorney and defendant has ever been described as "cocounsel."

d. Application of Mitchell. In its brief, the Commonwealth states that defense counsel "acted as standby counsel for the defendant's case, including [handling] the direct examination of Doyle and the defendant's closing argument." It argues, though, that the inquiry ordinarily

mandated by our case law for a valid waiver of the right to counsel was not required here because, although the defendant did knowingly and intelligently waive his right to counsel, the case is controlled by Mitchell, 438 Mass. at 550. There, the court held that no colloquy was required when a defendant gave narrative testimony, rather than be questioned by counsel, because he insisted on testifying falsely and counsel could not ethically suborn perjury. See id. at 550-551.

Here, the judge essentially adopted a broadened Mitchell model to allow the defendant to call and examine Doyle, whom, because trial counsel knew she would perjure herself, trial counsel could not ethically call. This was not an unreasonable approach as, at the time of trial, Commonwealth v. Leiva, 484 Mass. 766, 774-775 (2020), discussed infra, had not yet been decided. Indeed, it is fair to say that the judge took some care with respect to the calling and examination of Doyle to ensure that the law, as he understood it, was followed.

But Mitchell is of no application here. Mitchell does not stand for the proposition that there are circumstances where a defendant can waive his right to counsel and represent himself without the inquiry required by art. 12. Indeed, the court has, subsequent to the trial in this case, made clear that, despite some of its language, Mitchell, in which the defendant chose to exercise his constitutional right to testify in his own behalf

despite counsel's inability ethically to call or examine him, did not involve the defendant representing himself and did not implicate the right to counsel in any way.  See Leiva, 484 Mass. at 776 n.9.  The court in Leiva, explained,

> "To the extent that the court in Mitchell suggested that direction of narrative testimony requires a defendant's limited waiver of the right to counsel's assistance, we clarify that where a trial judge implementing [Mass. R. Prof. C. 3.3 (e)] exercises discretion to direct that a defendant's testimony take narrative form (should the defendant persist in the decision to testify falsely), this does not leave the defendant 'unrepresented' during that testimony.  Where the defendant decides to testify under these circumstances, that decision carries a rule-based relinquishment of the right to direct examination by counsel, which counsel is accordingly duty-bound to explain as part of the remonstration requirement [(i.e., the requirement under rule 3.3 (e) that counsel 'strongly . . . discourage' the client from perjuring himself and 'advis[e] that such a course [of conduct] is unlawful, will have substantial adverse consequences, and should not be followed')]."

Id.  Leiva thus explains that Mitchell leaves intact the rule that waiver of the right to counsel requires the searching on-the-record inquiry described by the court in Barros, 494 Mass. at 100-101, even in a situation where the Mitchell procedure is used for a defendant exercising the constitutional right to testify in the defendant's own behalf despite counsel's inability ethically to call and examine the defendant.

    e.  The defendant's self-representation.  On this record, we conclude that once the defendant conducted the redirect examination of Doyle, and until the conclusion of the trial, he

represented himself, with the assistance of standby counsel.[3] That is because prior to Doyle's redirect examination, the defendant flatly discharged trial counsel, and asked that he be appointed standby counsel. The judge agreed. Trial counsel's two comments at the charge conference the next day did not go beyond the ordinary role of standby counsel. Even assuming these comments amounted to substantial participation, at least when the defendant does not object, as was the case here, standby counsel can "participat[e] [in a case] outside the presence of the jury," McKaskle, 465 U.S. at 179, for example at a charge conference.

Our dissenting colleague concludes that throughout the trial, including both during the direct examination of Doyle and the period after Doyle's cross-examination, the defendant had the other form of hybrid representation, in which the client and the attorney are "cocounsel," rather than the attorney acting as standby counsel. Post at    .

As we have described, this is contrary both to what the judge and the defendant said, and to what the defendant did as

_____

[3] Although much of this case has revolved around the calling and examination of Doyle, given the clarity of what happened after her cross-examination, we need not determine the nature of the defendant's legal representation during that process.

the case proceeded.[4]  The judge said after the cross-examination
of Doyle that trial counsel would serve as standby counsel, not
cocounsel.  And while during the examination of Doyle the judge
appears to have been trying to employ Mitchell, which, before
Leiva, he might reasonably have understood as some kind of
limited self-representation model, the judge never suggested
that Mitchell provided "guidance on how to implement the
cocounsel model of representation."  Post at    .  Indeed, the
judge never used the term cocounsel, nor did he refer to Molino.

Perhaps more fundamentally, although our dissenting
colleague recognizes that "[h]ybrid representation with the
attorney acting as an advisor effectively waives the right to
counsel and thus must be accompanied by a defendant's knowing
and voluntary waiver," post at    , the dissent also states that
in the cocounsel model, the defendant need not execute a knowing
and intelligent waiver of the right to counsel, id. at    .
There is no support for this suggestion in our case law, and it
is also contrary to the Commonwealth's argument on appeal.
Perhaps most notably, our dissenting colleague cites none.

Instead, it has long been the rule that there must be a
knowing and intelligent waiver of the right to counsel in such

---

[4] We also disagree with our colleague that the defendant
"remain[ed] fully represented" throughout the proceedings.  Post
at    .

circumstances.  As the United States Court of Appeals for the

First Circuit explained fifty years ago, in a case in which a

trial judge allowed the defendant himself to examine witnesses

and argue his case, with counsel available at all times for

consultation or for resumption of the full conduct of the trial,

> "the arrangement at [the defendant's] trial raises the
> issue of effective waiver of counsel:  whatever label is
> attached to it, the net result was that [the defendant] had
> less than the full representation by counsel to which,
> absent a valid waiver, he was entitled under the Sixth
> Amendment. . . .  We can conceive of no reason why the
> standard for waiving part of a constitutional right should
> be different from the standard for waiver of the entire
> right.  Respondent argues, and we agree, that it is within
> the discretion of a trial court to allow the sort of hybrid
> arrangement that was adopted in this case. . . .  But it
> does not follow that such an arrangement is the equivalent
> of full representation by counsel for purposes of waiver
> . . . ."

Maynard v. Meachum, 545 F.2d 273, 277 (1st Cir. 1976).  Among

other things, the application of this bright-line rule means

that courts avoid the substantial problems that would arise if

they were required -- both in the trial court and on appeal --

to determine in cases of hybrid representation in just how much

self-representation the defendant was going to or had engaged.

f.  Lack of inquiry.  Once the defendant began to represent

himself and trial counsel was relegated to standby counsel, the

judge did not engage in the "careful inquiry on the record"

required to determine whether the waiver was knowing and

intelligent.  Means, 454 Mass. at 89.  He did not provide

information to the defendant of the risks of self-representation.  Nor did he ask any questions at all.  This was a violation of art. 12.

Although Barros held "that art. 12 always requires this inquiry to ensure that a defendant's waiver of counsel is knowing and intelligent, at any stage of a case," Barros, 494 Mass. at 106, in that case despite the absence of the required on-the-record inquiry, the court reviewed the record to determine whether it "leave[s] us 'confident' that this defendant knowingly and intelligently waived his constitutional right to assistance of counsel," id. at 111, quoting Martin, 425 Mass. at 720.  We thus also review the record to determine whether it leaves us confident that at the time of waiver the defendant had "adequate[] aware[ness] of [(1)] the seriousness of the charges, [(2)] the magnitude of [the] undertaking, [(3)] the availability of advisory counsel, and [(4)] the disadvantages of self-representation."  Barros, supra at 101, quoting Martin, supra.

The record does not do so here.  In light of the discussions surrounding the possibility of the defendant utilizing a modified Mitchell procedure to call and examine Doyle, without a clear statement from the judge informing the defendant, the record does not give us confidence that the defendant was adequately aware of the disadvantages of self-

representation.  Likewise, even though the record reveals the defendant understood the seriousness of the punishment he faced, and showed some familiarity with the criminal justice system in having been a defendant before, where he was not aware of the elements of the offenses with which he was charged, we cannot say with confidence that the record reveals that he had an understanding of the magnitude of the undertaking.[5]  The defendant's purported waiver of counsel therefore lacked the required knowingness and intelligence in violation of art. 12. Such "violations of right to counsel are not subject to harmless error analysis."  Barros, 494 Mass. at 113, citing Means, 454 Mass. at 88-89.  Consequently, we must vacate the defendant's convictions, set aside the verdicts, and remand the case to the Superior Court for further proceedings consistent with this opinion, including a new trial should the Commonwealth decide to proceed with one.[6]

So ordered.

---

[5] The dissent indicates the defendant had further experiences as a defendant in the criminal justice system than those noted by the trial judge, apparently referring to court activity record information (CARI) that was submitted with the motion for a new trial.  Even were it permissible for us to review this material, which was not in the record at trial, the number of criminal cases in which the defendant was involved cannot overcome the defendant's lack of understanding demonstrated on the trial record.

[6] Given our conclusion, we do not reach the defendant's other claims underlying the denial of his motion for a new trial.

BRENNAN, J. (dissenting).  In Commonwealth v. Molino, 411 Mass. 149, 152-153 & n.5 (1991), the Supreme Judicial Court described two distinct forms of hybrid representation in a criminal trial.  In the first model, the attorney and the defendant act as cocounsel and both "may address the court, question witnesses, and join in the conduct of trial."  Id. at 153 n.5.  Although unorthodox, and perhaps inadvisable, permitting this form of hybrid representation is within a judge's discretion.  See id. at 152.  See also LeBaron v. Commonwealth, 464 Mass. 1020, 1020 (2013).  A defendant and an attorney acting collaboratively as cocounsel is not the same as self-representation and thus does not trigger the waiver of counsel requirements recently reaffirmed by the Supreme Judicial Court in Commonwealth v. Barros, 494 Mass. 100, 112 (2024).  Alternatively, the attorney may operate "in a purely advisory capacity" without participating in case presentation.  Molino, supra at 153 n.5.  The second model is akin to self-representation with standby counsel.  Id.

Throughout postconviction litigation, the defendant has framed the central issues as self-representation and deprivation of counsel.  The decision denying the defendant's motion for a new trial and the majority opinion in this appeal, although reaching different conclusions, both reflect an analytical approach that responds to the defendant's framework.  I see this

trial through a different lens, in which the attorney-defendant relationship was never severed; rather, the defense approach throughout the trial fit the "cocounsel" hybrid representation model described in Molino, 411 Mass. at 153 n.5. I disagree with the majority that there was a break in the cocounsel relationship prior to the redirect examination of the defendant's primary witness, Karen Doyle, and that thereafter counsel acted only in a standby role. Ante at . I therefore disagree that the defendant was deprived of his constitutional right to counsel, thereby creating structural error that mandates reversal. To the contrary, the defendant was represented by experienced counsel, while the judge also indulged the defendant's insistence that he be allowed to participate actively as cocounsel, primarily so the defense could present a witness whom his attorney was prohibited ethically from calling. The defendant chose to act as cocounsel and to take the lead at certain junctures of the trial with a full understanding of the nature of counsel's role.

I discern no error in the judge's decision to monitor the situation rather than move immediately to a waiver of counsel colloquy in the aftermath of the defendant's emotional outburst following the prosecutor's cross-examination of Doyle. Because the defendant and counsel continued to act collaboratively as cocounsel for the remainder of trial -- just as they had prior

to this inflection point -- no colloquy was required.  I would affirm the defendant's convictions and therefore respectfully dissent.

Discussion.  1.  A defendant and attorney may act as cocounsel.  "The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights each provide criminal defendants with a right to choose between pleading through a lawyer and representing oneself" (quotation and citation omitted).  Commonwealth v. Miranda, 484 Mass. 799, 818, cert. denied, 141 S. Ct. 683 (2020).  "To gain assistance, a defendant need not surrender control entirely to counsel."  Id. at 819, quoting McCoy v. Louisiana, 584 U.S. 414, 421 (2018).  A represented defendant must cede authority over trial management and strategy to counsel, including the decision whether to call a particular witness; however, a self-represented defendant has the right to "control the organization and content of his own defense" (citation omitted).  Miranda, supra at 819.  When a defendant decides to self-represent, the judge must make certain that the defendant's waiver of counsel is knowing and intelligent.  See Barros, 494 Mass. at 112.

"A defendant does not have a constitutional right to choreograph special appearances by counsel" (quotation and citation omitted).  Molino, 411 Mass. at 153.  Nevertheless, a judge has discretion to permit hybrid representation in one of

two forms:  (1) the defendant and attorney act as cocounsel, sharing the right and responsibility of addressing the court, questioning witnesses, and otherwise conducting the trial; or (2) the attorney may operate as an advisor only but does not participate in case presentation.  Id. at 153 n.5

To the extent the cocounsel model of hybrid representation has been permitted by criminal trial judges, it does not appear to have been subject to appellate review.  Therefore, no appellate case exists to provide judges with a mechanical or legal framework for employing the cocounsel model at trial. Similarly, there is no appellate guidance regarding the defendant's requisite level of understanding or the judge's role in explaining the particulars of cocounsel representation.  What is evident from Molino, 411 Mass. at 153 n.5, however, is that the cocounsel approach does not require a defendant to give up any rights, let alone the fundamental right of representation by counsel.  Sharing the rights and responsibilities of representation with counsel is a boon.  A defendant who acts as cocounsel with trial counsel remains fully represented while also enjoying benefits traditionally denied a represented defendant, such as addressing the court directly, having an equal voice in trial strategy, and participating in the presentation of the case.  See id.  See also Mitchell, 438 Mass. at 552 (judge should instruct counsel on how to proceed with

narrative testimony and ensure defendant understands situation). Just as testifying on one's own behalf is not self-representation, see Commonwealth v. Leiva, 484 Mass. 766, 776 n.9 (2020), sharing responsibilities with counsel is not self-representation that requires a knowing and intelligent waiver of counsel.

In contrast to the cocounsel approach, the advisory model of hybrid representation is indistinguishable from self-representation with standby counsel; indeed, the court in Molino stated that "[s]tandby counsel usually falls in the [advisor] category." Molino, 411 Mass. at 153 n.5. Standby counsel does not formally represent the defendant and does not protect the defendant's interests in the same way or to the same extent as counsel. See id. at 152-154. See also Commonwealth v. Leonardi, 76 Mass. App. Ct. 271, 275-276 (2010). Hybrid representation with the attorney acting as an advisor effectively waives the right to counsel and thus must be accompanied by a defendant's knowing and voluntary waiver. See Molino, supra at 150 n.2 (describing defendant with this hybrid model as proceeding pro se and recounting necessary colloquy).

2. The defendant made an informed decision to proceed at trial as cocounsel with his attorney. Although the judge was not required to conduct a formal colloquy with the defendant regarding cocounsel representation, a conscientious judge acts

as the "guiding spirit and controlling mind at a trial." Commonwealth v. Campbell, 371 Mass. 40, 45 (1976), quoting Goldman v. Ashkins, 266 Mass. 374, 380 (1929). As such, the judge here had numerous discussions before and during trial with the defendant and his attorney regarding counsel's role at trial. These interactions reflected the judge's response to the fluidity of the circumstances, changing dynamics during the trial, and the defendant's mercurial attitude toward counsel. At each such juncture, the judge took pains to inform the defendant about his choices and gave the defendant ample time to confer with his attorney.

From the outset, it was apparent to the judge that the defendant had extensive experience in the criminal justice system[1] and wanted to control the proceedings in this case. As the majority observes, counsel was the defendant's fourth appointed attorney in this case. The judge responded initially by setting clear parameters on the defendant's choices: representation by counsel or self-representation with standby counsel. When it became evident that part of the conflict with counsel was the defendant's strong belief that Doyle was

---

[1] The defendant's criminal history included fifteen other criminal cases in Massachusetts, and he was the subject of eighteen restraining orders.

essential to his defense, but counsel could not examine her, the judge sought a solution that would address these competing concerns. To be sure, the judge was under no obligation to propose a hybrid solution. However, a judge may at times need to resort to unorthodox solutions to vexing issues that arise during the ebb and flow of trial.

Here, the defendant faced an exceptionally strong prosecution case. As discussed, he was an experienced litigant who was expressing displeasure with his fourth appointed counsel. The defendant consistently communicated a desire to be represented by counsel. He also strongly believed that his only avenue of defense was Doyle, whom his attorney was unable to call as a witness. The judge certainly could have left the defendant with the choice of representation by counsel at the cost of calling Doyle or calling Doyle at the cost of his right to representation by counsel. Instead, the judge afforded the defendant the option of hybrid cocounsel representation as a middle road that could satisfy both of the defendant's competing needs. The judge described each choice of representation to the defendant in detail and responded to the defendant's questions. He warned the defendant that by questioning Doyle, the defendant could expose himself to criminal prosecution for suborning perjury. The judge reviewed the Mitchell decision with the defendant and informed him that it was the only Massachusetts

case providing guidance on how to implement the cocounsel model of representation. He candidly expressed initial uncertainty about how to navigate this unchartered territory and consulted with counsel about the proper approach. The judge spoke in plain terms, including using "tag team" as a metaphor to explain the cocounsel model to the defendant. On several occasions, the judge emphasized that the choice of representation was the defendant's to make. The judge gave the defendant the opportunity to discuss his options with counsel before asking the defendant whether he preferred "a Mitchell format" or "reduc[ing] [trial counsel] to advising you, and you're going to be carrying the ball." The defendant told the judge he was satisfied with an arrangement whereby he and counsel would share trial tasks and confirmed to the judge that he would be permitted to "step in" any time during the trial if he felt "something is not going right." Ultimately, therefore, the defendant made an informed choice to act as cocounsel with his attorney at trial so he could reap the benefits of representation by counsel while also actively directing and participating in his defense, including calling Doyle as a witness.

3. The defendant acted as cocounsel with his trial attorney throughout the trial. The trial record in this case demonstrates that the attorney-client relationship fell under

the cocounsel model of hybrid representation, and that there was no break in that relationship for the duration of the trial.

a. The trial began with a collaborative cocounsel approach between the defendant and counsel. Once it was settled that the defendant would proceed with a cocounsel approach to trial, the judge told the defendant he was welcome to be present for any sidebar conferences. Counsel took the lead in arguing motions in limine. The defendant, however, raised the issue of attorney-led voir dire of jurors and personally discussed its "pros and cons" with the judge. The judge left the decision on how to proceed to the defendant and counsel together. Counsel then took the primary role during jury empanelment. Counsel presented the opening for the defense, but only after the defendant told the judge directly that he wanted an opening statement notwithstanding counsel's inclination to waive it. Counsel also cross-examined the Commonwealth's witnesses during its case-in-chief. Both counsel and the defendant addressed the judge when an issue arose about a juror's potential exposure to the defendant during a break in the trial. At the close of the Commonwealth's case, counsel moved for a required finding of not guilty on the defendant's behalf. After the judge denied the motion, counsel questioned the first defense witness. The judge then asked the defendant whether he "wish[ed] to proceed further as we had discussed." The defendant responded affirmatively.

The judge instructed the jury that "under our system of justice, every defendant has the right to participate in his or her trial.  I understand from counsel that Mr. Hempel wishes to exercise his right to participate . . . by calling a witness. Is that correct, gentlemen?"  The defendant responded, "Yes, sir."  The judge continued, "And presenting evidence.  It's altogether appropriate that he be allowed to do that."  The defendant conducted Doyle's direct examination, but counsel objected during the prosecutor's cross-examination and argued the admissibility of prior statements the prosecutor sought to offer in evidence to impeach Doyle.

b.  The defendant did not unequivocally assert his right to self-representation and thus a waiver of counsel was not required.  After Doyle's cross-examination, the defendant complained to the judge that he was not aware that Doyle would be impeached with her prior statements.  The defendant stated he did not want to talk to counsel, and counsel confirmed the defendant no longer wanted him to question witnesses or make the closing argument.  The judge expressed concern that the defendant's self-representation at that juncture of the trial could "become[] an appellate issue" and began to inquire if the defendant wanted to "discharge [his] lawyer"; however, the defendant interrupted, saying that counsel could "stay on standby for now."  The judge explained the advisory role of

standby counsel if the defendant was "taking over the case," to which the defendant responded, "[I]t is what it is at this point."

The majority concludes that the defendant's statements during this exchange "flatly discharged" counsel.  Ante at     .  I disagree.

A defendant's assertion of the right to self-representation is triggered by a clear and unequivocal declaration to the trial judge that the defendant wants to self-represent and does not want counsel.  See Faretta v. California, 422 U.S. 806, 835 (1975).  The defendant's choice must be "unequivocal, . . . voluntarily and knowingly made, . . . asserted in a timely manner, . . . and not sought for an improper purpose, such as delaying or disrupting the trial" (quotation and citation omitted).  Commonwealth v. Barbosa, 99 Mass. App. Ct. 132, 137 (2021).  Thus, whether a defendant asserts the right to self-representation is not based solely on the words spoken to the judge but must be assessed contextually and with deference to the trial judge, whose perspective inherently animates the analysis.

Here, the defendant's expression of displeasure with counsel was not new; it was a recurring theme that had required deft management by the judge even prior to the commencement of trial.  When deciding how to respond to the defendant's

statements in the aftermath of Doyle's cross-examination, the judge was aware that (1) the defendant was on his fourth attorney in the case and had twice sought pretrial to replace him with a fifth lawyer; (2) the defendant told the judge before the trial began that he could not get a fair trial in the county where the trial was taking place; (3) the defendant had been consulting with an "in-house" attorney at the jail, who had provided advice different from appointed counsel's; (4) the defendant had extensive experience with the criminal justice system; (5) the defendant's history and behavior caused the judge concern from the outset of the trial that the defendant was "instigat[ing] difficulties" with counsel "in an effort to derail the trial"; (6) the defendant was responding emotionally to a difficult moment in the trial; and (7) the defendant stated that he did not want counsel to continue "[b]ecause of ineffective counsel, the same reasons why I've tried to fire him right along, since day one."  Moreover, the judge was required to weigh the significance of the defendant's assertions in real time, without notice, with jurors waiting to enter the court room, and with the evidence nearly concluded.

Faced with these circumstances, the judge chose to monitor the situation rather than respond in the moment to the defendant's outburst.  At the conclusion of his exchange with the defendant, the judge noted that the defendant did not

"suffer[] from any mental health condition that would preclude him from going forward." The judge then brought the jurors back into the court room and resumed the trial. Despite the defendant's statement that he no longer wanted his attorney to represent him, the defendant and counsel immediately fell back into their collaborative cocounsel relationship. The judge made a record of his observations of the interactions between the defendant and counsel the morning after the defendant "announced that he wished to take over." Specifically, the judge stated that the defendant appeared to be seeking advice from counsel on the form and subject matter of his redirect examination of Doyle and their relationship "still appear[ed] to be a collaboration." Additionally, for the remainder of trial, the judge continued to refer to the attorney as "your counsel" when speaking to the defendant, counsel called the defendant "my client," and the defendant agreed to consult with counsel before making critical decisions, such as whether to testify.

On this record, I discern no error in the judge's implicit determination that the defendant did not assert unequivocally his right to self-representation. Based on the defendant's mercurial attitude toward counsel throughout pendency of the case, the timing and circumstances of the defendant's statements regarding counsel's continued representation, and the judge's legitimate concern that the defendant was attempting to disrupt

the trial or manufacture appellate issues, the judge exercised sound judgment by not reflexively turning to a waiver of counsel colloquy and instead "observ[ing] carefully" to see whether counsel was relegated to a standby role.

    c.  <u>The defendant and counsel continued to act as cocounsel</u>.  Although the defendant stated that he no longer wanted counsel to represent him after the prosecutor's cross-examination of Doyle, his behavior demonstrated otherwise.  Once the trial resumed, the nature of the defendant's relationship with his attorney remained unchanged from the cocounsel collaboration the defendant had chosen at the outset of trial.  Counsel instructed the defendant how to present a statement to Doyle to rehabilitate her testimony and assisted the defendant with questioning Doyle.  Counsel also addressed the admissibility of a statement the prosecutor sought to introduce in evidence during the recross-examination of Doyle.  After Doyle's testimony, the defendant and counsel conferred before jointly addressing witness and closing argument issues with the judge.  The defendant discussed with counsel whether he should testify before telling the judge he would exercise his right not to testify.  Counsel formally rested on the defendant's behalf.

    During the Commonwealth's rebuttal case, the defendant and counsel consulted with each other before declining to question one of the witnesses.  Counsel informed the judge there was no

surrebuttal evidence from the defense.  Counsel again took the lead during the charge conference, but the defendant weighed in with the judge on the request for a self-defense instruction. The defendant delivered his own closing argument.  Before the case was sent to the jury, the defendant and counsel individually indicated satisfaction with the form of the exhibits and the verdict slips.  Both commented on the judge's proposed response to a jury question during deliberations. After the jury verdict, counsel presented a sentencing argument on the defendant's behalf.

This level of involvement by counsel went well beyond the role of advisor.  See Molino, 411 Mass. at 153 n.5; Leonardi, 76 Mass. App. Ct. at 275-276.  Just as before Doyle's redirect examination, counsel shared responsibility with the defendant for strategy and advocacy.  I therefore disagree with the majority's conclusion that, beginning with the redirect examination of Doyle, counsel "did not go beyond the ordinary role of standby counsel."  Ante at    .  On the contrary, even to the extent the defendant's participation became more active on certain tasks, counsel maintained equal, if not primary, responsibility for safeguarding the defendant's interests.  I therefore conclude that the cocounsel -- or "tag-team" -- relationship between the defendant and counsel remained consistent in this trial from beginning to end.

Conclusion.  The defendant was a forty-four year old adult with extensive court experience working with his fourth attorney at the time of trial in this case.  His choices throughout the trial, including cocounsel representation, were fully informed and made after consultation with experienced counsel.  Because cocounsel representation is not self-representation, a knowing and intelligent waiver of counsel was not required.  Under the circumstances of this case and considering the context in which they were made, the defendant's statements that he wanted to "fire" counsel after Doyle's cross-examination were not a clear and unequivocal declaration that he wanted to represent himself for the remainder of the trial, and thus the judge was not required to conduct a waiver of counsel colloquy.  Because of the trial judge's flexibility and exercise of discretion, the defendant received the trial he asked for; that the result was not what he hoped for does not change this reality.  I discern no error in the judge's decision to permit the defendant to act as cocounsel with his attorney nor in the manner the judge implemented this hybrid model of representation at trial.

For these reasons, I respectfully dissent.